IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN GRIZZAFFI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-07-3299 |
| | § | |
| MICHAEL J. ASTRUE | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court[1] in this social security appeal is Defendant's Motion for Summary

Judgment (Document No. 10), and Memorandum in Support (Document No. 11), Plaintiff's cross

Motion for Summary Judgment (Document No. 12), and Plaintiff's Reply to Defendant's Motion

for Summary Judgment (Document No. 13). After considering the cross motions for summary

judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons

set forth below, that Defendant's Motion for Summary Judgment is GRANTED, Plaintiff's

Motion for Summary Judgment is DENIED, and that the decision of the Commissioner of the

Social Security Administration is AFFIRMED.

---

[1]On March 4, 2008, pursuant to the parties' consent, this case was transferred by the
District Judge to the undersigned Magistrate Judge for all further proceedings. See Document No.
9.

## I.      Introduction

Plaintiff, John Grizzaffi ("Grizzaffi"), brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his request for disability insurance benefits ("DIB") for the period of April 15, 1998 to December 1, 2002. According to Grizzaffi, substantial evidence does not support the ALJ's decision, and the ALJ, Martin McPhail, committed errors of law when he found that Grizzaffi was not disabled prior to December 1, 2002. (Document 12). The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision that Grizzaffi was not disabled as a result of his impairments during the time period at issue, and that the decision comports with applicable law and therefore should be affirmed.  (Document 11).

## II.     Administrative Proceedings

Grizzaffi applied for disability insurance benefits on February 24, 2003, claiming that he has been unable to work since May 15, 1998, as a result of large swollen testicles. (Tr. 16, 61-63, 68)[2]. The Social Security Administration denied his application at the initial stage. (Tr. 16, 30, 54-58). Upon reconsideration, the Social Security Administration found him disabled beginning December 1, 2002. After that, Grizzaffi requested a hearing before an ALJ to contest the onset date. The Social Security Administration granted that request and the ALJ held a hearing on January 9, 2007, during which the ALJ considered the condition Grizzaffi referred to as "elephantiasis scrotum." That condition had not been considered in the previous decision. On

---

[2] "Tr." refers to the transcript of the administrative record.

2

February 13, 2007, the ALJ issued his decision finding Grizzaffi not disabled within the meaning of the Social Security Act from May 15, 1998 to December 1, 2002.

Grizzaffi sought review by the Appeals Council of the ALJ's decision. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion, (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § § 404.970, 416.1470. After considering Grizzaffi's contentions in light of the applicable regulations and evidence, the Appeals Council concluded, on August 9, 2007, that there was no basis upon which to grant Grizzaffi's request for review. (Tr. 4-6). The ALJ's findings and decision thus became final. Grizzaffi timely filed his appeal of the ALJ's decision. 42 U.S.C. § 405(g). The Commissioner has filed a Motion for Summary Judgment (Document No. 10) and a Memorandum in Support thereof (Document No. 11). Plaintiff has likewise filed a Motion for Summary Judgment (Document No. 12) and a Reply to the Defendant's Motion for Summary Judgment (Document No. 13). This appeal is now ripe for ruling.

### III.      Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel,* 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the cause for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris,* 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen,* 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999); *Cook v. Heckler*, 750 F.2d 391 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1939)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden

of proving his disability. *Johnson v. Bowen,* 864 F.2d 340, 344 (5th Cir. 1988). The Act defines

disability as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and

laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit

the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work which exists in
> the national economy, regardless of whether such work exits in the immediate area in
> which he lives, or whether a specific job vacancy exists for him, or whether he would be
> hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that

one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging

in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d at 293 (quoting *Milam v.*

*Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, he
   will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in
   Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled"
   must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful
   activity, taking into consideration his age, education, past work experience, and

residual functional capacity, he will be found disabled.

20 C.F.R. § § 404.1520, 416.910, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563

n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the

claimant bears the burden of proof on the first four steps of the analysis to establish that a

disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). If successful, the burden

shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.*

Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the

claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any

step in the process, the Commissioner determines that the claimant is or is not disabled, the

evaluation ends. *Leggett*, 67 F.3d at 564.

Here, the ALJ found at step five that Grizzaffi, despite his impairments and limitations,

could perform some light work prior to December 1, 2002. In this appeal, the Court must

determine whether substantial evidence supports that ALJ's step five finding. According to

Grizzaffi, the ALJ erred by not consulting a medical expert to determine the onset date of the

disability.

In determining whether substantial evidence supports the ALJ's decision, the court weighs

four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating

physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the

plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background,

work history, and present age. *Wren*, 925 F.2d at 126. Any conflicts in the evidence are to be

resolved by the ALJ and not the court. *See Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir.

2000)(citing *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

## V.     Discussion

### A.  Objective Medical Facts

The medical evidence shows that Grizzaffi suffers from scrotal elephantiasis and obesity.  The medical evidence indicates that Grizzaffi first sought treatment from Dr. Chris Sim for a swollen scrotum in July 1997. (Tr. 137). The notes indicate that he had a scrotal edema, but no pain or tenderness, and was too obese, at 359 pounds, to undergo elective hydrocelectomy[3]. In August 1997 he saw the doctor again, the scrotum was enlarged with a bilateral hydrocele[4] and he also had mild penal edema, but still no tenderness. (Tr. 136). Grizzaffi saw Dr. Sim again in September 1997 for chest congestion and the scrotal edema and hydrocele were noted without any changes. (Tr. 136).

On January 6, 1998, Grizzaffi sought treatment from Dr. Jose Montes for a hernia in his testicles. (Tr. 129). He was diagnosed with Elephantiasis Scrotum and morbid obesity at 365 pounds. (Tr. 129). The doctor instructed three months rest and referred him for a scrotal ultrasound and to an urologist. (Tr. 129). Grizzaffi also sought treatment from Doctor Sim in January 1998 for scrotal swelling. The doctor noted again his obesity and the large hydrocele but that he was still in no pain or distress. (Tr. 135). At another appointment in February 1998 with Dr. Sim for a sore throat no changes were noted in the scrotum and hydrocele. (Tr. 134).

In April 1998, Grizzaffi sought treatment from Dr. Sim for increased scrotal swelling, pain and difficulty lifting and walking. (Tr. 133). The doctor noted very enlarged scrotal edema with

---

[3]Excision of a hydrocele. *Dorland's Illustrated Medical Dictionary* 783 (28th ed. 1994).

[4]A circumscribed collection of fluid in the testicle or along the spermatic cord. *Id.*

7

no tenderness, pus or bleeding and no obvious hernia as well as mild penal edema. (Tr. 133). The

doctor granted him a certificate to return to work with limitations because of the scrotal edema.

(Tr. 108, 133).  The note limited Grizzaffi to light duty and requested that he not be required to

lift more than twenty five pounds until he is re-evaluated. (Tr. 108).

Doctor Montes referred Grizzaffi for a scrotal ultrasound because of the scrotal swelling,

which took place on May 18, 1998. (Tr. 117). The ultrasound report states that Grizzaffi has:

1.  Small bilateral hydroceles with no intratesticular abnormality.
2.  Small varicocele in the superolateral left scrotum.
3.  Marked peritesticular soft tissue thickening/edema

(Tr. 117).

Grizzaffi's alleged onset date of disability is May 15, 1998. Since the alleged onset date,

the record has limited medical evidence until May 1999. In August 1998 and May 1999 Grizzaffi

had follow up appointments with Dr. Montes; the medical records noted no changes.  (Tr. 122,

127).

There is no medical evidence in the record from the doctor's visit in May 1999, through

March 2001. In April 2001, Grizzaffi sought treatment from Dr. Sim for cough and congestion.

(Tr. 132). In his report, Dr. Sim noted that the enlarged scrotum and hydrocele had not changed.

(Tr. 132).  He sought treatment again in September 2002, for an earache from swimming. (Tr.

132).

On May 5, 2003, Grizzaffi was examined by Dr. Donald Gibson. (Tr. 144-147). Dr.

Gibson's assessment noted that he had chronic edema in his lower legs, shortness of breath, and

mild back pain but does not mention the enlarged scrotum. On the same day a Residual Functional

Capacity Assessment was completed. (Tr. 156-163). According to the Assessment, Grizzaffi

8

could occasionally and frequently lift and/or carry ten pounds, could stand and/or walk at least two hours in an eight hour work day, could sit (with normal breaks) for a total of about six hours in an eight hour work day, and had no limitations with pushing and/or pulling. (Tr. 156-157).

The enlarged scrotum is not prominently mentioned again in the medical records until the records from his scrotoplasty surgery at Methodist hospital in October 2005. The hospital admission consultation noted severe enlargement (elephantiasis) of the scrotum, which causes difficulty in ambulating and pain, morbid obesity and an umbilical hernia. (Tr. 165, 168). According to Dr. Dinh, the physician who performed the procedure, at this point the scrotum had been enlarging for nine years and is now hanging at his ankle, preventing walking and wearing of normal clothing. (Tr. 165). There is no objective medical evidence as to the relative size of Grizzaffi's scrotum prior to October 2005, and particularly, prior to December 1, 2002.

In light of the objective medical facts, as more fully set forth above, the Court finds that there is substantial evidence to support the ALJ's decision that Grizzaffi was not disabled within the meaning of the Act from May 15, 1998 to December 1, 2002. While the objective medical evidence for that time period shows that Grizzaffi's scrotum was enlarged, and there was edema, there was no tenderness or pain noted, and no mention of any limitations placed on Grizzaffi as a result of the condition. Therefore, the objective medical evidence factor supports the ALJ's decision.

**B.  Diagnosis and Expert Opinions**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis, and medical evidence of the treating physician, especially when the consultation has been

9

over a considerable amount of time, should be accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, the opinion must be more than conclusional and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981). Indeed, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez*, 64 F.3d at 176). The opinion of a medical specialist is generally accorded more weight than opinions of non-specialists. *Id.*

Even if an opinion of a treating physician is not entitled to controlling weight because it was not consistent with the other substantial evidence of the record and was not well supported by medically acceptable clinical and laboratory diagnostic techniques, the opinion nonetheless is still entitled to deference and must be weighed in light of the following factors:

(1) The physician's length of treatment of the claimant,

(2) The physician's frequency of examination,

(3) The nature and extent of the treatment relationship,

(4) The support of the physician's opinion afforded by the medical evidence of the record,

(5) The consistency of the opinion with the record as a whole, and

(6) The specialization of the treating physician.

*Newton*, 209 F.3d at 456. "The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 45.

Because the issue in this case is the onset of disability, Grizzaffi contends that the ALJ erred in his consideration of Dr. Dinh's retrospective diagnosis that the condition had been progressing over a period of nine years. Grizzaffi also contends that the ALJ should have sought the assistance of a medical expert in analyzing the medical record. In response, the Commissioner contends that the ALJ properly assessed Grizzaffi's RFC for the relevant time period, namely, from May 1998 through November 2002, and that based on the medical records, Grizzaffi could perform light work with some limitations and was not disabled within the meaning of the Act.

The ALJ found that Grizzaffi had two severe impairments, history of elephantiasis scrotum and obesity. Although Grizzaffi had an alleged disability, during the time period at issue, he had the RFC to perform light work with some limitations, work that was available in the economy at that time. The ALJ found that during that time period he had the RFC to perform work activity that involves frequently lifting and carrying up to ten pounds and occasionally up to twenty pounds; standing/walking for up to two hours in an eight hour workday; sitting for up to six hours of an eight hour work day and the inability to climb ladders, ropes and scaffolds, balance, stoop, kneel crouch or crawl and an inability to have any public contact. (Tr. 19) The ALJ's RFC finding was more restricted than Dr. Sim's opinion in April 1997, that he should lift no more than twenty five pounds and perform light duty.

In considering all of the medical evidence the ALJ properly relied on all of the medical opinions in the record. There was sufficient medical evidence for the ALJ to establish that the

elephantiasis was not disabling for Grizzaffi during the relevant period despite Dr. Dinh's finding that it has been enlarging for nine years in 2005. In the administrative hearing, Grizzaffi testified that the growth greatly sped up in 2004. (Tr. 209). In May 1998, Eric Geibel, described his scrotum as "normal size homogenous testicles bilaterally" with no abnormality in his scrotum. (Tr. 130). There is no evidence in the medical records that Grizzaffi sought treatment for his swollen scrotum from June 1999 through March 2001, and no change in the scrotum was noted when he returned to Dr. Sim in April 2001. Accordingly, the expert medical opinion factor weighs in favor of the ALJ's decision.

### C.  Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled.  *Cook,* 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides that allegations of pain do not constitute conclusive evidence of disability.  There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain.  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record.  42 U.S.C. § 423.  "Pain constitutes a disabling condition under the SSA only when it is `constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment which can limit the range of

jobs a claimant would otherwise be able to perform. *See Scott v. Shalala,* 30 F.3d 33, 35 (5th Cir. 1994).   The Act requires this Court's findings to be deferential.   The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

Grizzaffi testified at the January 9, 2007 hearing concerning his alleged impairments during the time period at issue. According to Grizzaffi, he has been unable to work since May 1998. (Tr. 197). He testified that he was unable to work during the relevant time period due to groin pain, urinary problems, nausea, poor circulation, and breathing problems. (Tr. 200-201, 204). However, he later stated that he was missing work because he was "getting sick a lot and [he] was depressed" and that he was in pain, but not a whole lot of pain. (Tr. 200). Grizzaffi also testified that he could not lift more than ten to twenty pounds, stand for very long or walk a city block. (Tr. 204-205). Despite that, Grizzaffi testified that after he left work in May 1998 he was able to drive, do laundry, dishes and other house work, such as vacuuming, sweeping and mopping.  (Tr. 199, 207). He also testified that his mother or niece did the grocery shopping for him during that time. (Tr. 207).

The ALJ found that Grizzaffi's complaints and subjective symptoms were not entirely credible. In doing so, the ALJ wrote:

> The claimant testified that he was unable to work during the relevant period due to groin pain, nausea, poor circulation, breathing problems due to weight, and urinary problems. He indicated that he was unable to lift no more than 10 to 20 pounds, stand "not too long," sit for no more than 20 minutes at one time, and walk for less than one city block during the relevant period. However, he admitted that he had been able to wash dishes, launder clothes, vacuum, and mop.  …
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting

13

effects of these symptoms are not entirely credible.

The claimant's reported activities are not shown to be consistent with his claim of total disability prior to December 2002. In April 1998, he was advised to avoid heavy lifting(Exhibit 5F, page 30). In August 1998, he sought treatment due to swelling of the testicles. (Exhibit 4F, page 6). However, in April 2001, he reported that he had been swimming the week before. (Exhibit 5F, page 2).

\*\*\*

The claimant did not seek or receive frequent medical treatment prior to December 2002, which tends to undermined his allegations of incapacitating symptoms prior to December 2002. The growth of the scrotum was progressive over 9 years. He testified that the growth greatly sped up in 2004. He further testified that this scrotum was the size of 2 fists when he left his employment. However, by the time of the consultative examination in May 2003 (Exhibit 9F), the scrotum was down to his knees. During the internal medicine consultative examination (Exhibit 9F), no mention was made regarding a problem with the scrotum.

The claimant was non-compliant against medical advice to lose weight. In April 1998, he weighed 374 and in September 2002 he weighed more than 400 pounds.

(Tr. 20-21).

Credibility determinations, such as that made by the ALJ in this case, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995).Because the record shows that the ALJ made and supported his credibility determination, and because the ALJ did not rely on any inappropriate factors in making his credibility determination, this factor also weighs in favor of the ALJ's decision.

### D.  Education, Work History and Age

The fourth element considered is the claimant's educational background, work history and present age.  A claimant will be determined to be disabled only if the claimant's physical or mental

impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(a).

The record shows that Grizzaffi was fifty-one years old at the time of the hearing, and had completed high school. (Tr. 197-A). His past relevant work experience was as a crew foreman and property manager. (Tr. 218-219). The ALJ questioned Charles R. Poor, a vocational expert ("VE"), at the hearing about Grizzaffi's ability to do his past work and his ability to engage in other gainful work activities. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995)(quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Id.*

Based on the ALJ's conclusion that Grizzaffi had the residual functional capacity to lift/carry up to ten pounds, stand/walk for up to two hours and sit for up to six hours in an eight hour work day, only occasionally balance, stoop, kneel or crawl but is unable to climb - ropes, ladders, scaffolds

and cannot have any public contact, the ALJ questioned a vocational expert to determine whether Grizzaffi could perform any of his past work, and if not, whether he could perform any other work that exists in significant numbers in the national economy. The following hypotheticals were posed to the vocational expert:

Q    Okay. Series of hypotheticals. Mr. Poor. Assume if you would an individual the same age, education, and work experience as Mr. Grizzaffi, who could lift 10 pounds frequently, 20 pounds occasionally, stand and walk 6 hours but sit for 6 hours and only occasional climbing. No work around ropes, ladders, or scaffolds, occasional balancing, stooping, kneeling, crouching, and crawling. Could such a perform  the past work as Mr. Grizzaffi?

A    No sir.

Q    Could you identify three other jobs such a person could perform?

A    A person as outlined in that hypothetical really is a description of a person that could do light work, restricted and representative jobs that would be consistent with that would include a hand packager, a vehicle equipment cleaner, and a dishwasher.

Q    Can you give occurrences please?

A    Yes, these data all come from Texas Workforce Commission and/or the U.S. Bureau of Labor Statistics. The greater Houston area, the incidents is estimated for hand packager at about 17,000 and nationally 1.1 million. Vehicle equipment cleaner, greater Houston area about 6,800 and nationally 480,000. Dishwashers in the greater Houston area about 6,000 and nationally about 410,000.

Q    [Does] how these jobs are described by the DOT conflict with how they perform in the national economy today?

A    No, sir.

Q    Further assume such a person can lift 10 pounds frequently and 20 pounds occasionally, can stand and walk only 2 hours, but sit for 6 hours, never work around ropes, ladders, or scaffolds, and again only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, do the three jobs you identified in response to hypothetical number one still exist in response to hypothetical number three?

A    Tell me the first part of your hypothetical in terms of the lifting requirements, 10 pounds -

Q    Frequently and 20 pounds occasionally.

16

A       Frequently.

Q       But standing and walking only two hours and sitting for six hours .

A       The vehicle and equipment cleaner job would have to be eliminated and actually also
        the dishwashing job would have to be eliminated because of requirements of being on
        your feet -

Q       Okay

A       -- more than two hours

Q       Well why don't you give me three new, three other occupations if they exist.

A       Okay. That would include jobs such as a bench assembler, hand packager job is still
        in play, and a optical goods worker. The instance for the optical goods worker in the
        greater Houston area, about 78,000 and nationally 5 million. Wait a minute, excuse
        me, I'm looking at the wrong thing. In the greater Houston area, about 5,000 and
        nationally about 256,000.

Q       256,000?

A       Wait just a minute.

Attny:         Judge, make certain my - -

VE:     Yeah, about 5,000 in the greater Houston area and about 256,000 nationally.

ALJ:    Okay.

BY ADMINISTRATIVE LAW JUDGE:

Q       And again, how the DOT describes those jobs as being performed, does it conflict
        with how they're performed in the national economy today?

A       No sir.

Q       Add to that last hypothetical that such a person is not to have any public contact. Do
        those three jobs that you identified in response to hypothetical number two still viable
        in responses to hypothetical number three?

A       Yes, they would have minimal to no public contact.

Q       Okay, would that reduce the occurrences?

A       No more than 10 percent.

Q       Okay. Further assume such a person can only lift less that 10 pounds frequently and
        up to 20 pounds, I'm sorry, less than 10 pounds frequently and up to 10 pounds

17

occasionally, standing and walking for two hours but sitting for 6 hours, the occasional climbing, balancing, stooping, kneeling, crouching and crawling, and no work around ropes, ladders, or scaffolds. Do those three jobs that you identified in response to hypothetical number two still exist in response to hypothetical number three or four?

A    Yes, yes.

Q    And add to hypothetical number three, that's the one with no public contact, that such a person would be tardy or absent for four or more days a month. Would those three jobs still exist?

A    No sir they would not.

Q    Is there any other work that would exist in response to that hypothetical person?

A    In my opinion, no.

ALJ:   Mr. Herren?

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

Q    Mr. Poor, if restricted to sedentary work, would it be - -

A    If what, what did you say?

Q    If the individual were restricted to sedentary - -

A    Okay, all right.

Q    -- activity, would it, would the jobs available be unskilled in this case? Would there be any transferable skills in other words, to sedentary?

A    Well the hand packaging job, more often than not, is unskilled, the bench assembler job can be both unskilled and semi skilled and the optical goods worker and be both unskilled and semi skilled. Depends on the level of work.

Q    Were there skills required of that nature in these jobs? Did this individual acquire those kind of skills?

A    Well I think so. I read his description of his work. Obviously he, make certain I'm not thinking of some other case, yeah he talked about working with tools, pipe wrenches, meters, tool working with hand tools, I think would be consistent with some of the requirements of the jobs I've mentioned.

(Tr. 219-223).

Because there is substantial evidence in the record to support the ALJ's conclusion that

Grizzaffi can perform work with limitations, and because the vocational expert testified that, within the relevant time period, Grizzaffi could, within the range of work with limitations, perform work as a bench assembler, hand packager, and optical goods worker, this final factor also supports the ALJ's decision.

## VI.    Conclusion and Order

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982).  As all the relevant factors weigh in support of the ALJ's decision, and as the ALJ properly considered the expert medical opinions in the record and properly relied upon and applied the medical vocational guidelines, the ALJ's decision was supported by substantial evidence and comports with applicable law.  Therefore, the Court ORDERS that Defendant's Motion for Summary Judgment (Document No. 10) is GRANTED, Plaintiff's cross Motion for Summary Judgment (Document No. 12) is DENIED, and that the Commissioner's decision be AFFIRMED.

Signed at Houston, Texas, this 2nd  day of  July,  2008.


Frances H. Stacy
United States Magistrate Judge